Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 98 C 1849 | DATE | 3/17/2000 |
| CASE TITLE | OAK BROOK BANK vs. NORTHERN TRUST CO., ETAL | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   **Motion (14-1 and 19-1) for summary judgment is granted/denied in part.**

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | MAR 20 200 | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| DW | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

OAK BROOK BANK,

    Plaintiff,

v.

THE NORTHERN TRUST CO.,
ROBERT G. HERSHENHORN, and
HUMESCO, INC.,

    Defendants.

No. 98 C 1849
Judge James B. Zagel



## MEMORANDUM OPINION AND ORDER

Oak Brook Bank has sued Robert G. Hershenhorn and Humesco, Inc. for check kiting causing over $400,000 of loss. Oak Brook also sued The Northern Trust Company for the loss alleging violations of Federal Reserve Regulation CC and of section 4-302 of the Uniform Commercial Code ("UCC"). Northern Trust seeks summary judgment.

Hershenhorn (and his companies) had checking accounts at both banks. On Tuesday, 10 February 1998, he deposited 25 Northern Trust checks into his Oak Brook account. Each check exceeded $2,500, and together they totaled $451,494.76. The next day, Wednesday, 11 February, Oak Brook presented them to Northern Trust. Two days later, Friday, 13 February, Northern Trust picked up the phone between 1546 and 1552 hours and orally notified Oak Brook of its decision to dishonor them. It returned the checks to the Chicago Fed, which received them at 1646 hours.



Of course, Oak Brook had credited Hershenhorn's account in the amount of $451,494.76 and had honored checks drawn on that account. Otherwise there would be no check kiting. Oak Brook paid out $444,125.76.

Check kiting is a venerable form of fraud; sometimes engaged in as an outright ripoff, sometimes engaged in to allow a relatively legitimate business to survive a short-term lack of cash flow (which, if it succeeds, is often overlooked under the no harm-no foul rule, even though there is a loss of interest harm). It is nicely described by Judge Grady in *First National Bank in Harvey v. Colonial Bank,* 898 F. Supp. 1220 (N.D. Ill. 1995).

Obviously, the thrust of Oak Brook's claim is that it would have been much better off if Northern Trust had picked up the phone and called Oak Brook at 1546 to 1552 hours on 11 February, rather than on 13 February (Count I). Or even if it had returned the dishonored checks in a more timely manner (Counts II and III). Northern Trust says that it acted as quickly as it was legally obliged to and, for this reason, cannot be held liable.

Regulation CC says that Northern Trust had to "provide notice of nonpayment such that the notice is received by the depository bank by [1600 hours] on the second business day following the banking day on which the check was presented to the paying bank." *See* 12 C.F.R. § 229.33(a). Telephonic notice suffices. *See* 12 C.F.R. § 229.33(c)(1). The two banks agree that the deadline applicable here is 1600 hours, Friday, 13 February. So Northern Trust may be off the hook, if it gave timely notice as required by Regulation CC. The telephone records and transcript of the call establish that the call was placed before 1600 hours. I do not think it is in

dispute that notice was not completed by 1600 hours.[1] Oak Brook claims that the notice came at 1615 hours. Northern Trust asserts that, even if completed notice was a few minutes late, there is no claim that any Oak Brook check was honored between 1600 and 1615, and therefore no damage.

Regulation CC also says that, since the checks were presented on Wednesday, Northern Trust had to return a dishonored check in an expeditious manner so that it would normally be received by Oak Brook not later than 1600 hours on Friday. *See* 12 C.F.R. § 229.30(a). This was not done (and I do not understand Northern Trust to argue that it was), so Northern Trust argues that it escapes liability because its omission (conceded for purpose of this motion) did not cause any damage to Oak Brook.

Regulation CC does limit damages to those actually caused by tardiness of notice or return of dishonored checks. *See* 12 C.F.R. § 229.38. Basically, Oak Brook honored all of the checks drawn on its Hershenhorn accounts before 1600 hours Friday. By the time notice and return were required under Regulation CC, the damage was done. Oak Brook could have refused to honor the checks drawn on uncollected funds. Oak Brook says that this is not so, that it still had until 1700 hours to return at least some of the checks drawn on it to a Northern Trust branch two miles away from the bank. But, Oak Brook did not fully understand its position until 1630 hours and by then, it says, it was too late. I cannot say that the difference between knowing at 1615 hours and knowing at 1630 hours necessarily is inconsequential in the context of this case,

---

[1] According to Northern Trust's own automated time keeping, the substantive notice conversation began at 1550 hours, and the last check number was identified a few seconds after 1600. If Ameritech's records are correct, then the conversation started at about 1552 hours and ended at 1606 hours.

-3-

but there is no claim that any withdrawals were permitted after 1600 hours, in any event. The affidavit on which Oak Brook relies for the proposition that it had the opportunity to dishonor some checks is a vague document, but it is enough, barely, to prevent summary judgment. The damages may not be significant, but, on this record, I cannot say they are non-existent. I would permit a further summary judgment motion on this single issue.

The Bank Deposit and Collections Code of the UCC also applies to the transaction. 810 ILCS 5/4-302(a) makes Northern Trust responsible for the amount of the dishonored checks if it did "not pay or return the item or send notice of dishonor until after its midnight deadline." That deadline here is midnight, Thursday, 12 February. 810 ILCS 5/4-104(a)(10). That deadline was clearly missed, and liability under this law is absolute. But Regulation CC says the deadline under the UCC "is extended to the time of dispatch of such return or notice of nonpayment where a paying bank uses a means of delivery that would ordinarily result in receipt by the bank to which it is sent...on or before the receiving bank's next banking day following the otherwise applicable deadline." 12 C.F.R. § 229.30(c); *see First National Bank of Chicago v. Standard Bank and Trust Co.*, 172 F.3d 472 (7th Cir. 1999). Northern Trust did return the checks to the Fed on the next business day, 13 February. The Fed, which is the receiving bank, is open 24 hours each day for delivery of checks for collection or return.

Oak Brook disputes no part of this argument, except the last sentence of it, which asserts the proposition that the Fed "banking day" is 24 hours long. The Fed clearly does not offer substantially all of its services at 1646 hours on Friday. It has a skeleton crew in check operations — its peak hours for check operations are 0000 hours to 0900 hours. Its cash operations are finished by 1400 hours or earlier on Friday. Wholesale payment and fiscal

services are mostly ended by 1600 hours. Book entry and wire transfers are still available at 1646 hours on Friday. To individuals, as opposed to banks, the Fed offers the opportunity to complain about the Fed and the ability to get educational materials.

Regulation CC defines "banking day [to mean] that part of any business day on which an office of a bank is open to the public for carrying on substantially all of its banking functions." *See* 12 C.F.R. § 229.2(f). The UCC definition is the same, and the UCC Commentary tells us that the banking would be over if a bank took deposits and cashed checks but had closed its loan and bookkeeping departments. The Court of Appeals has said much the same. *United Bank of Crete-Steger v. Gainer Bank*, 874 F.2d 475 (7th Cir. 1989); *Merrill Lynch, Pierce, Fenner and Smith, Inc. v. Devon Bank*, 832 F.2d 1005 (7th Cir. 1987). In simple terms, Oak Brook argues that Northern Trust could have sent the dishonored checks to Oak Brook via messenger well before its banking day ended on Friday. What it did instead was the equivalent of taking the checks out to Oak Brook and dropping them in the night depository. Oak Brook asks for summary judgment on this claim.

Northern Trust seems to agree that if the Fed is an ordinary bank, to which ordinary banking rules apply, then Northern Trust loses.

Regulation CC defines "Bank." *See* 12 C.F.R. § 229.2(e). It lists the usual suspects, the places where people have savings and checking accounts, which do not include the Fed. It then adds that: "For purposes of subpart C of this part...the term bank also includes...a Federal Reserve Bank." Subpart C governs only collection of checks. Therefore the Fed is a bank only for purposes of accepting checks for collection or return, and its sole "banking function" is check handling. In simple terms, the Fed is a banker only to other banks who require check processing

services and to these customers it carries on all of its functions every hour of the day. It is true that the Fed does not process as quickly at 1646 hours as it would at 0400 hours, but it still performed its banking function. The Fed's banking public is other banks and, consistent with its central role in our banking system, it did provide its banker-to-the-banks services at 1646 hours on Friday. Its operations as banking regulator, monetary policy maker and fiscal agent of the Treasury may have been unavailable at 1646 hours, but its banking functions were available, if only nominally.

I agree with Northern Trust that I cannot consider the speed and effectiveness of the Fed's operations at 1646 hours in deciding whether the midnight deadline has been met. The Northern Trust is entitled to rely on the established hours of opening and closing; bright line rules are important here. *Merrill, Lynch v. Devon Bank*, 832 F.2d at 1007.[2]

I deny Oak Brook's motion for summary judgment on Count III and grant Northern Trust's motion for summary judgment on Count III. I deny Northern Trust's motion for summary judgment on Counts I and II without prejudice to further motion on the question of damages.

ENTER:

James B. Zagel
United States District Judge

DATE: MAR 17 2000

---

[2] If checks like those delivered by Northern Trust are received before 2100 hours, the Fed will give the payor bank next business day credit to its account and the checks will be delivered to the depositary bank on the next business day. The Fed would have done no better for Oak Brook if Northern Trust had delivered the checks in the early morning hours of Friday.